**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Scott NOVOSEL, also known as Bob Novosel, also known as Joe Novosel, also known as Bob Novosell, Defendant–Appellant.**

No. 03–4190.

United States Court of Appeals,
Tenth Circuit.

June 24, 2004.

Wayne T. Dance, Asst. U.S. Attorney, Salt Lake City, UT, for Plaintiff–Appellee.

Michael G. Katz, Fed. Public Defender, Vicki Mandell–King, Asst. F.P. Defender, Denver, CO, for Defendant–Appellant.

Before BRISCOE and O'BRIEN, Circuit Judges, and HEATON, District Judge.[*]

**ORDER AND JUDGMENT[**]**

TERRENCE L. O'BRIEN, United States Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argu-

---

[*] The Honorable Joe Heaton, United States District Judge for the Western District of Oklahoma, sitting by designation.

[**] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ment. *See* Fed. R.App. P. 34(f). The case is therefore submitted without oral argument.

Robert Scott Novosel pled guilty pursuant to a plea agreement to two drug-related offenses. He was sentenced to 110 months imprisonment. He appeals, alleging the Government breached the plea agreement. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude there was no breach and affirm.

## I. Background

On September 11, 2002, Novosel pled guilty to possession of a chemical (red phosphorus) used to manufacture a controlled substance (methamphetamine) and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 843(a)(6) and 841(a)(1), respectively. Pursuant to a plea agreement, in exchange for Novosel's guilty plea, the Government agreed to recommend a three-level adjustment for acceptance of responsibility under USSG § 3E1.1 and to file a motion pursuant to 18 U.S.C. § 3553(e)[1] based on Novosel's substantial assistance in the prosecution of Randy Pope.[2] In Paragraph 17 of the agreement, Novosel acknowledged the following:

> I understand that if I knowingly violate any local, state or federal law between now and the time of my sentencing, such offense may constitute a violation of this plea agreement. I also understand that the Court will decide whether a violation of the plea agreement has occurred. If the Court finds that I have breached this agreement by violating any law, I

understand that the Court may relieve the government of any obligations and commitments in this plea agreement while leaving intact my plea of guilty.

(R, Vol. I, Docket Entry # 36 at 4.)

Sentencing was originally set for January 8, 2003. Novosel failed to appear and sentencing was reset to January 23, 2003. Novosel again failed to appear and a warrant was issued for his arrest.

Despite attempting to flee the apprehending officers, Novosel was arrested four months later. The Government filed a pretrial release violation petition. Although Novosel initially denied the allegations, he eventually admitted to absconding from pretrial supervision and failing to appear for sentencing. Sentencing was reset to June 25, 2003.

As a result of Novosel's admissions, the Government filed a supplemental response to the presentence report, recommending an obstruction of justice adjustment pursuant to USSG § 3C1.1 and arguing Novosel was not entitled to an acceptance of responsibility adjustment. In a second supplemental response, the Government stated it was no longer willing to request a downward departure under USSG § 5K1.1 based on Novosel's conduct. Specifically, it stated "it is the position of the Government that [Novosel] can not [sic] be rewarded for cooperation after absconding." (R., Vol. I, Docket Entry # 54 at 2.)

At sentencing the court imposed an obstruction of justice adjustment and denied an acceptance of responsibility adjust-

1. This section provides:
   **Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
   18 U.S.C. § 3553(e).

2. At Pope's trial, Novosel was called as a witness by Pope. His testimony, however, was favorable to the prosecution.

ment.[3] Because Novosel's criminal history category was IV[4] and the offense level was 28, the guideline range was 110–137 months imprisonment. The court sentenced Novosel to 110 months imprisonment. This appeal followed.

## II. Discussion

Novosel contends the Government violated the plea agreement. He admits he violated federal law by failing to appear at sentencing. Nevertheless, he alleges the Government could not unilaterally declare such conduct a breach of the agreement and thereby relieve itself of its plea agreement obligations. Rather, he argues that pursuant to Paragraph 17 of the agreement, whether he violated the agreement and whether the Government was relieved of its obligations under the agreement were to be determined by the court. Because the court made no finding of breach, Novosel asserts the Government was obligated to make its promised sentencing recommendations and its failure to do so constituted a breach of the agreement. He relies on our decision in *United States v. Guzman,* 318 F.3d 1191 (10th Cir.2003).

The Government argues that although the district court never used the word "breach," it explicitly determined that Novosel breached the plea agreement when it found that he had failed to appear at sentencing, absconded for four months, and fled from the apprehending officers. It further contends a commonsense reading of the record reveals the court implicitly

relieved the Government of its plea agreement obligations.

Although Novosel did not object to the alleged breach in the district court, his failure to object does not preclude his right to appeal such breach. *United States v. Peterson,* 225 F.3d 1167, 1170 (10th Cir. 2000), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 893, 148 L.Ed.2d 799 (2001). Whether the Government has breached a plea agreement is a question of law reviewed de novo. *Id.*

In this case, the Government had two relevant sentencing obligations under the plea agreement: (1) to recommend a three level adjustment for acceptance of responsibility and (2) to file a substantial assistance motion under 18 U.S.C. § 3553(e). On appeal, the Government argues a substantial assistance motion would have had no effect on Novosel's sentence because it would only have eliminated the five-year mandatory minimum sentence under Count II and the guideline range and actual sentence imposed were well above the statutory minimum. In reply, Novosel concedes such motion would have had no effect on his sentence but maintains an acceptance of responsibility adjustment would have. Because harmless error analysis normally does not apply when the Government has breached the plea agreement, *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Hawley,* 93 F.3d 682, 693–94 (10th Cir.1996),[5] the sole issue

3. Novosel does not challenge the imposition of the obstruction of justice adjustment nor does he contend the Government's recommendation of such an adjustment was contrary to its plea agreement obligations.

4. The probation department initially calculated Novosel's criminal history category as V. Novosel objected to the PSR, requesting one of his alleged convictions be stricken based on an absence of proof. The district court

agreed with the objection and, as a result, Novosel's criminal history category was reduced to a IV.

5. *But see United States v. Belt,* 89 F.3d 710, 713 (10th Cir.1996) (government's breach harmless in "very limited" context where the sentencing court gave the defendant the lowest possible sentence it could legally give).

before us is whether the Government breached the agreement, not whether the court would have reached the same result had the breach not occurred.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. 495. *See also United States v. Werner,* 317 F.3d 1168, 1170 (10th Cir.) ("Government promises in a plea agreement must be fulfilled to maintain the integrity of the plea."), *cert. denied,* —— U.S. ——, 124 S.Ct. 74, 157 L.Ed.2d 59 (2003). A two-step analysis is applied in determining whether the Government breached a plea agreement. *Werner,* 317 F.3d at 1170. First, we examine the nature of the Government's promise. *Id.* Second, we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered. *Id.* Contract principles apply in the analysis. *Id.* Therefore, in the absence of ambiguity, the express terms of the agreement control. *Guzman,* 318 F.3d at 1195. If the agreement is ambiguous, we construe any ambiguities against the Government as the drafter of the agreement. *Id.*

"It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the Government of its reciprocal obligations under the agreement." *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Nevertheless, because important due process rights are involved in the area of plea negotiations, a judicial determination of defendant's breach is required; whether a defendant has breached the agreement "is not an issue to be finally determined unilaterally by the government." *Id.* "If the pleadings reveal a factual dispute on the

issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of law." *Id.*

With these principles in mind, we turn to the language of the plea agreement. The parties agree the relevant language is Paragraph 17. They also agree its plain language makes clear three things: (1) a violation of federal law may constitute a breach of the plea agreement, (2) whether such violation is a breach is to be determined by the court, and (3) if such breach is found by the court, it may relieve the Government of its agreement obligations. Where the parties differ is in their interpretation of what occurred at the sentencing hearing.

A review of the sentencing transcript reveals the court did not expressly state that Novosel's conduct constituted a breach of the agreement. Nor did the court make any statement explicitly relieving the Government of its plea agreement obligations. However, before hearing from the Government, the court stated:

> The Court has received a very thorough report regarding Mr. Novosel. I have also received an update. And refreshing the Court's memory on this case, this case was set for sentencing some months ago and Mr. Novosel did not appear for sentencing. I understand at that time the United States attorney was prepared to make a motion recommending a downward departure because of his assistance in the prosecution of other defendants. And now, because of his conduct, the motion is being withdrawn.
>
> . . .
>
> I certainly was willing to give him acceptance previously, but the conduct follow-

ing that is, I am just afraid, negated. It's tied my hands with respect to what I feel I can do for him.

(R, Vol. III at 3–4.) Later, in response to the Government's arguments, which outlined Novosel's conduct, including his failure to appear at sentencing, his absconding and his fleeing from the apprehending officers, the court stated:

[A]s I said, counsel, I sure felt disposed to be very helpful to Mr. Kouris,[6] but all of those things taken into consideration, and his disregard or disrespect for his counsel and for the Court and the system and law enforcement, I just don't know that I feel that I can give him consideration for acceptance.

(*Id.* at 10.)

The above statements clearly indicate a judicial determination of breach and a release of the Government from its plea agreement obligations. Specifically, the court's finding that Novosel was not entitled to an acceptance of responsibility adjustment based on his conduct and its acknowledgment of the Government's withdrawal of the substantial assistance motion are equivalent to a determination that Novosel violated the plea agreement and that the Government was thereby relieved of its plea agreement obligations.

This conclusion is bolstered by the fact that the judge who sentenced Novosel was the same judge who took his change of plea. At the change of plea hearing, the judge read directly from the plea agreement, ensuring Novosel understood each provision. Notably, the following exchange occurred:

THE COURT: Seventeen, you understand that if you knowingly violate any local, state or federal law between now and the time of your sentencing, such offense may constitute a violation of this plea agreement.

MR. NOVOSEL: Yes.

THE COURT: You also understand that the Court will decide whether a violation of the plea agreement has occurred, and if the Court finds that you have breached this agreement by violating any law you understand that the Court may relieve the government of all obligations and commitments in the plea agreement while leaving intact your plea of guilty.

MR. NOVOSEL: Yes.

(R., Vol. II at 15.) This colloquy clearly demonstrates the judge was aware of the Government's plea agreement obligations and his own obligations under Paragraph 17.

Novosel relies heavily on our decision in *Guzman,* 318 F.3d 1191. In *Guzman,* pursuant to a plea agreement, the Government agreed to make certain sentencing recommendations in return for the defendant's guilty plea. *Id.* at 1192. Notably, the Government agreed to recommend that the defendant receive an acceptance of responsibility adjustment and not receive an obstruction of justice adjustment. *Id.* at 1192–93. These recommendations were "contingent upon the defendant's continuing manifestation of acceptance of responsibility, and no attempts to obstruct justice. . . ." *Id.* at 1192 (quotations omitted). The agreement also automatically relieved the Government of these obligations if, in the opinion of the Government, the defendant did not comply "fully, truthfully and honestly with [its] terms." *Id.* at 1193 (quotations omitted). Prior to sentencing and at sentencing, the Govern-

---

**6.** Mr. Kouris was Novosel's counsel. It is apparent the judge misspoke and intended to say "Mr. Novosel."

ment made sentencing recommendations in direct conflict with those it promised in the agreement. *Id.* at 1193–94. Although the district court gave the defendant an acceptance of responsibility adjustment, it imposed an obstruction of justice adjustment. *Id.* at 1194. The defendant appealed, alleging the Government had breached the plea agreement. *Id.* at 1195–96.

On appeal, the Government argued it made its sentencing recommendations because the defendant had previously breached the plea agreement, thereby nullifying the agreement. *Id.* at 1196. We rejected the Government's argument. *Id.* Citing *Calabrese,* we stated "the government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement." *Id.* The Government further argued that although the district court did not make an express finding of breach, its findings at the sentencing hearing were equivalent to a determination that the defendant had breached the plea agreement. *Id.* We disagreed, noting the district court's sentencing findings were inconsistent with the plea agreement. *Id.* at 1196–97. For instance, while the district court found that the defendant had obstructed justice, it also granted an acceptance of responsibility adjustment which, according to the plea agreement, was contingent upon the absence of any obstruction of justice. *Id.* at 1196. Also, although the district court found, based on evidence presented at the sentencing hearing, that the defendant had falsely accused a law enforcement officer of drug planting, it did not use this finding as the basis for the obstruction of justice adjustment. *Id.* Rather, the district court based the obstruction of justice adjustment on the defendant's alleged intimidation of an officer, an allegation that remained disputed be-

cause the Government presented no evidence at the sentencing hearing establishing such intimidation. *Id.* at 1194, 1196. In conclusion, we stated:

> In this case, the District Court permitted a unilateral declaration of breach, and entertained the unfavorable recommendations that followed, without holding the hearing or making the determination required by *Calabrese.* Although the court heard witness testimony at sentencing, that testimony was not focused on the Plea Agreement. More importantly, the court made no express finding that [the defendant] had breached the Plea Agreement before the government made its sentencing recommendations.

*Id.* at 1197.

*Guzman* is distinguishable. Here, unlike in *Guzman,* the plea agreement did not permit the Government to unilaterally decide whether Novosel was in violation of the agreement. Rather, this decision was to be made by the district court. Also, there was no factual dispute concerning Novosel's failure to appear at sentencing and his absconding from pretrial supervision, as he admitted to such conduct in the pre-trial release violation proceedings. Additionally, unlike the ambivalent statements made by the district court in *Guzman,* the district court's findings in this case were clear and consistent with the plea agreement. The district court, aware of the history of the case, including Novosel's admissions to the pre-trial release violation petition, and its own role under Paragraph 17, made specific statements at sentencing equivalent to a judicial determination that Novosel's conduct violated the plea agreement and that the Government was relieved of its agreement obligations. Therefore, unlike in *Guzman,* we are not left to guess whether the district court was

aware of the plea agreement and acted pursuant to its terms.

## III. Conclusion

Indeed, the district court's conduct in this case is consistent with our decision in *Guzman*. What *Guzman* prohibits is a unilateral declaration of breach by the Government; no such declaration occurred in this case. While we prefer that the district court make express findings of breach, the undisputed facts of this case and the court's remarks at sentencing clearly demonstrate the court made the judicial determinations required by the plea agreement.

**AFFIRMED.**

BRISCOE, Circuit Judge, dissenting.

I respectfully dissent. In my view, the outcome here is controlled by our prior precedent in *United States v. Guzman*, 318 F.3d 1191 (10th Cir.2003), as well as the very explicit terms of the plea agreement at issue. I would reverse and remand for further proceedings to determine whether either Novosel or the government breached the plea agreement.

On appeal, the government does not dispute that it failed to satisfy its part of the plea agreement. Instead, it contends that Novosel breached the agreement first, thereby relieving the government from fulfilling its part of the agreement. I agree with the majority that "a judicial determination of a defendant's breach is required." Op. at 141. "The question of a defendant's breach is not an issue to be finally determined unilaterally by the government." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.1981). I disagree with the majority's conclusion that the district court's statements at sentencing "clearly indicate a judicial determination of [Novosel's] breach and a release of the Govern-ment from its plea agreement obligations." Op. at 142.

The government argues the district court "implicitly found" that Novosel breached the plea agreement and thereby "implicitly relieved the government of its commitments to make certain sentencing recommendations." Aple. Br. at 7, 10. The government must rely on the implicit findings of the district court because, as the majority notes, "the court did not expressly state that Novosel's conduct constituted a breach of the agreement," and did not "make any statement explicitly relieving the Government of its plea agreement obligations." Op. at 141–42.

Similarly, in *Guzman*, the government argued that "although the District Court judge did not make an express finding of breach, its findings at the sentencing hearing were equivalent to a determination that [defendant] breached the Agreement." *Guzman*, 318 F.3d at 1196. We rejected the government's argument and concluded the district court erred by "entertaining the government's recommendations." *Id.* at 1197. In large part, our decision rested on the fact that "the [district] court made no *express* finding that [defendant] had breached the Plea Agreement before the government made its sentencing recommendations." *Id.* (emphasis added).

The majority purports to distinguish *Guzman* on three grounds. First, the majority notes the plea agreement in this case is significantly different than the one in *Guzman*. I acknowledge the plea agreements are worded differently, but the differences favor Novosel, not the government. In *Guzman*, the plea agreement provided an automatic release of the government's obligations if, in the "opinion of the government," defendant breached the agreement. *Id.* at 1193. In spite of this language, we held that the district court erred by permitting the government to

unilaterally declare a breach. Here, the plea agreement provides that "the Court will decide whether a violation of the plea agreement has occurred." ROA, Vol. I, Doc. 36 at 4 (quoted fully on page 3 of majority opinion). Under the plea agreement, a violation of federal law does not necessarily constitute a breach; rather, it "may constitute a violation" of the agreement. *Id.* Even a finding by the district court that Novosel breached the agreement would not automatically release the government from its obligations. The agreement further provides that if Novosel breaches the agreement, "the Court may relieve the government of any obligations and commitments in this plea agreement." *Id.* Thus, under the terms of the plea agreement (as well as the law of this Circuit), it was the court's responsibility to determine whether Novosel breached the agreement and, if so, whether to release the government from its obligations and commitments.

Second, the majority states "there was no factual dispute concerning Novosel's failure to appear at sentencing and his absconding from pretrial supervision." Op. at 143–44. In *Guzman,* the government argued it was released from the plea agreement because, according to the government, defendant falsely accused a government agent of asking him to plant drugs in the residence of a suspect. The district court resolved any factual dispute about defendant's conduct by expressly finding defendant's drug planting allegations were false. We concluded, however, that the court's finding in that regard was not equivalent to a determination that defendant breached the agreement.

Third, the majority concludes that statements made by the district court at sentencing "clearly indicate a judicial determination of breach and a release of the Government from its plea agreement obli-gations." Op. at 142. However, the portions of the record cited by the majority indicate, at most, that the district court was predisposed to deny a downward adjustment for acceptance of responsibility. The court did not make a finding that Novosel's conduct constituted a breach of the plea agreement and did not release the government from its obligations under the agreement.

It might seem overly technical to remand this case when it appears the district court likely would have imposed the same sentence irrespective of the government's position at sentencing. However, as the majority states, "the sole issue before us is whether the Government breached the agreement, not whether the [district] court would have reached the same result had the breach not occurred." Op. at 141.

When a plea agreement is breached, a defendant is generally entitled to relief "regardless of whether the government's conduct actually affected the sentencing judge." *United States v. Hawley,* 93 F.3d 682, 693 (10th Cir.1996). In very limited circumstances, a breach may be treated as "immaterial" or harmless." *See, e.g., United States v. Belt,* 89 F.3d 710, 713 (10th Cir.1996) (concluding where government breached plea agreement by arguing against sentence of probation, breach was "harmless" because probation not available sentence); *United States v. Easterling,* 921 F.2d 1073, 1080 (10th Cir.1990) (concluding any breach by government of promise to file memorandum informing court of defendant's cooperation was "immaterial" where court credited defendant for cooperation at sentencing). I agree with the majority that this is not such a case.

I would reverse and remand for further proceedings. If, on remand, the district court determines that Novosel breached the plea agreement by absconding from

pretrial supervision and, as a consequence, the government should be released from the plea agreement, there would be no occasion for the district court also to consider whether the government's sentencing stance violated the plea agreement.